23CA1252 Peo v Harris 07-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1252
Delta County District Court No. 22CR178
Honorable J. Steven Patrick, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kenneth Lee Harris,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE GROVE
Harris and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 24, 2025

---

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant
Attorney General and Assistant Solicitor General, Denver, Colorado, for
Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jessica A. Pitts, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Kenneth Lee Harris, appeals the judgment of conviction entered on a jury verdict finding him guilty of felony driving under the influence (DUI), careless driving, failing to stop at a stop sign, following too closely, and failing to drive in a single lane.  We affirm.

## I.     Background

¶ 2     The jury could have reasonably found the following facts from the evidence introduced at trial.

¶ 3     In October 2022, a patrol officer saw a car roll through a stop sign, accelerate onto the highway, tail another car, and then drift outside of lane markers twice.  The officer initiated a traffic stop. He approached the car, smelled alcohol, and observed an empty "shooter"-sized bottle in the car's cup holder and an unopened case of beer on the passenger-side floorboard.

¶ 4     The officer asked the driver, Harris, if he had been drinking. Harris responded he had taken two shots an hour prior and was "over the legal limit."  Harris took a roadside sobriety test but failed to follow directions for some of the maneuvers.  He did not respond to the officer's request to take a blood alcohol or Breathalyzer test to determine his level of intoxication.  The officer interpreted Harris's

silence as a refusal. Based on his observations, the officer arrested Harris.

¶ 5    A jury convicted Harris of the counts listed above. Because the trial judge had previously supervised Harris in treatment court for a 2017 DUI conviction, he recused himself for Harris's sentencing. The new judge sentenced Harris to a term of four years in the custody of the Department of Corrections.

¶ 6    Harris appeals, arguing that the district court erred by (1) failing to give adequate jury instructions on reasonable doubt and (2) providing flawed instructions concerning Harris's purported refusal to provide a blood or breath sample when determining whether he was guilty of the alcohol-related charges.[1] Harris further contends that reversal is required because (3) the trial judge was actually biased against him.

## II.    Jury Instruction on Reasonable Doubt

¶ 7    Harris asserts that the district court reversibly erred by giving the 2022 Colorado model jury instruction on reasonable doubt. He

---

[1] Harris also argued that the district court erred when it admitted extrinsic evidence of uncharged criminality after the prosecution allegedly introduced Harris's full driving record. However, Harris later withdrew this argument.

argues that this instruction impermissibly lowered the prosecution's burden of proof, undercut the presumption of innocence, and shifted the burden of proof to him. We disagree.

## A. Additional Facts

¶ 8 Before 2022, the Colorado model jury instruction defined reasonable doubt as follows:

> Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence, in the case. It is a doubt which is not a vague, speculative or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

COLJI-Crim. E:03 (2021). That instruction has been approved by Colorado courts. *See, e.g., People v. Alvarado-Juarez*, 252 P.3d 1135, 1137 (Colo. App. 2010); *People v. Robb*, 215 P.3d 1253, 1262-63 (Colo. App. 2009); *see also Tibbels v. People*, 2022 CO 1, ¶ 25 (urging courts to adhere to "long-established pattern instructions").

¶ 9 In 2022, the model instruction was substantially revised to read as follows:

> Every person charged with a crime is presumed innocent. This presumption of innocence remains with the defendant throughout the trial and should be given effect

3

by you unless, after considering all the evidence, you are convinced that the defendant is guilty beyond a reasonable doubt.

The burden of proof in this case is upon the prosecution. The prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged. This burden requires more than proof that something is highly probable, but it does not require proof with absolute certainty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. If you are firmly convinced of the defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt. But if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.

After considering all the evidence, if you decide the prosecution has proven each of the elements of a crime charged beyond a reasonable doubt, you should find the defendant guilty of that crime.

After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, you should find the defendant not guilty of that crime.

COLJI-Crim. E:03 (2022).

4

¶ 10    The district court in this case gave the 2022 version of the instruction verbatim.  Harris objected, claiming that the new instruction misrepresented the concept of reasonable doubt and shifted the burden of proof "on the defense to prove that he's innocent."  He requested that the court give the previous version of the instruction or refrain altogether from instructing the jury on "reasonable doubt," pointing out that the 2022 instruction had also not yet been upheld on appeal.

¶ 11    Noting that the 2022 model instruction had been approved by the supreme court's Model Criminal Jury Instructions Committee, the district court denied Harris's requests and provided the instruction verbatim to the jury.

## B.    Analysis

¶ 12    Harris contends that the 2022 model instruction on reasonable doubt lowers the prosecution's burden of proof in several different ways, and that the district court's decision to give it in this case amounted to structural error.  *See Tibbels*, ¶ 25.

¶ 13    Two divisions of this court have recently considered similar challenges to the constitutionality of the 2022 model instruction on reasonable doubt.  *See People v. Melara*, 2025 COA 48, *People v.*

*Schlehuber*, 2025 COA 50. Both divisions concluded that the instruction did not impermissibly lower the prosecution's burden of proof and therefore was not structural error.

¶ 14 The arguments raised in *Schlehuber* are nearly identical to those that Harris advances in this case. Because we agree with the *Schlehuber* division's reasoning, we follow it here. In brief, we conclude as follows:

- The 2022 model jury instruction's failure to direct the jury that it could consider "the lack of evidence" does not lower the prosecution's burden of proof because the instructions as a whole inform the jury that "if the prosecution fails to present sufficient evidence of guilt, it will not have met its burden." *Schlehuber*, ¶¶ 19, 22; *see also Melara*, ¶ 24.

- The omission of the "hesitate to act" phrase that appeared in the previous model instruction clarifies, rather than confuses, the reasonable doubt standard, and makes it less likely that courts or jurors will rely on misleading analogies in an attempt to further explain the standard. *See Schlehuber*, ¶ 27; *see also Victor v.*

*Nebraska*, 511 U.S. 1, 24-25 (1994) (Ginsburg, J., concurring in part and concurring in the judgment).

- Defining reasonable doubt as a "real possibility" that the defendant is not guilty and proof beyond a reasonable doubt as proof that leaves jurors "firmly convinced" of the defendant's guilt is consistent with similar language approved by federal courts; the two phrases "work together to give the jury a complete picture of the reasonable doubt standard." *Schlehuber*, ¶ 33.

- Considering the reasonable doubt instruction as a whole and "in the context of the instructions as a whole and the trial record," we perceive no cumulative error because there is not a reasonable likelihood that the instruction, as given by the district court in this case, would "'allow a conviction based on a standard lower than beyond a reasonable doubt.'" *Id.* at ¶ 13 (quoting *Tibbels*, ¶ 36).

III.  Instruction on Refusal to Undergo Chemical Testing

Harris contends that the district court erred by instructing the jurors that they could consider Harris's refusal to take a blood or

breath alcohol test when determining whether he was guilty of any of the alcohol-related charges. We are not persuaded.

## A. Additional Facts

¶ 16    The court provided the jury with the following instruction regarding Harris's lack of response to the officer's request for chemical testing:

> You are instructed that any person who drives any motor vehicle in the State of Colorado may be required to submit to a chemical test for the purpose of determining the alcoholic or drug content of his or her breath or blood. If a person refuses to submit to such chemical test, then the jury may consider such refusal along with all other competent evidence in determining the defendant's guilt or innocence.
>
> If you find that the defendant refused to take a chemical test of the defendant's blood or breath, you may consider this refusal along with other evidence in determining whether the defendant is guilty of the offense of Driving Under the Influence (3 or more priors), Driving While Ability Impaired (3 or more priors), Driving Under the Influence, or Driving While Ability Impaired.

## B. Applicable Law and Standard of Review

¶ 17    Although the trial court has broad discretion to determine the form and style of jury instructions, "instructions that emphasize specific evidence are generally disfavored." *People v. Garcia*, 2021

8

COA 65, ¶ 46, *aff'd*, 2023 CO 41. We review a court's decision to give a particular jury instruction for abuse of discretion. *People v. Hoover*, 165 P.3d 784, 802 (Colo. App. 2006).

¶ 18 Where, as here, defense counsel did not object to an instruction challenged on appeal, we will reverse only if the instruction amounts to plain error. *People v. Garcia*, 28 P.3d 340, 344 (Colo. 2001). Plain error is "obvious and substantial," *People v. Stewart*, 55 P.3d 107, 120 (Colo. 2002), and will not lead to reversal unless it is seriously prejudicial and "so undermine[s] the fundamental fairness of the [proceeding] itself so as to cast serious doubt on the reliability of the judgment of conviction." *Hagos v. People*, 2012 CO 63, ¶ 14 (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).

## C. Analysis

¶ 19 According to Harris, the district court misled the jury because its instructions unnecessarily emphasized Harris's refusal to take a blood or Breathalyzer test, an evidentiary fact favorable to the prosecution. But our supreme court has held that a jury may be instructed to "consider such refusal along with all other competent evidence in determining the Defendant's guilt or innocence," and in

9

doing so, it approved an instruction that required the jury to determine in the first instance whether the defendant had "refuse[d] to submit to such chemical test." *Cox v. People*, 735 P.2d 153, 155 (Colo. 1987).

¶ 20 We acknowledge the concerns raised over a similar "refusal" instruction in Judge Welling's special concurrence in *People v. Montoya*, 2022 COA 55M, *aff'd in part and rev'd in part*, 2024 CO 20. But we see no meaningful difference between the "refusal" instructions provided in *Cox* and in this case. Regardless, any error here could not have been obvious given that instructions of this type have been widely accepted since *Cox*. *See People v. Pollard*, 2013 COA 31M, ¶¶ 39-41 (plain errors must be "so clear-cut, [and] so obvious, that a trial judge should be able to avoid [them] without benefit of objection"). Nor, given the strength of the evidence against Harris, would the inclusion of this instruction seriously undermine our confidence in the verdict. *See Hagos*, ¶ 14.

## IV. Judicial Bias

¶ 21 Harris contends that the judgment should be reversed because the trial judge was biased against him. We disagree.

## A.    Additional Facts

¶ 22    The prosecution sought to introduce evidence that, in addition to the prior DUI convictions listed in the complaint, Harris had a 2017 conviction for felony DUI.  Defense counsel argued that the prosecution could not show that the defendant in the 2017 case was Harris.  The trial judge then interjected:

> Again, as we get into this I just want to note that the Court is struggling with the idea of identity for Mr. Harris because Mr. Harris was actually in this Court on that [2017 DUI] case for a significant amount of time.  No one has asked me to do anything with that, but I am . . . the idea that the People can't establish that it's Mr. Harris in that case is problematic from the Court's perspective, but . . . go ahead.

A short time later, the judge said,

> I just note the Court is not testifying in this case, but I do know [the 2017 conviction is] Mr. Harris. Mr. Harris was in front of me for a year in that case in treatment court – a year and a half. I recognize I'm not going to testify to that.  The court specifically cannot testify to that and I'm not saying I'm going to.

¶ 23    The judge admitted evidence of the 2017 DUI conviction, but, over the prosecution's objection, excluded certain information related to it.  While the jury was deliberating but before sentencing, the trial judge commented that it was his practice to give

11

defendants who had appeared before him in treatment court "the option of being resentenced by another judge." Neither party asked the judge to recuse. Nonetheless, after trial but before sentencing, the trial judge recused sua sponte.

## B. Standard of Review and Preservation

¶ 24    Whether a trial judge's recusal was required is a question of law that we review de novo. *Richardson v. People*, 2020 CO 46, ¶ 25. A claim of statutory bias is subject to waiver, *People v. Garcia*, 2024 CO 41M, ¶ 1, but a claim of actual bias is not, *People v. Jennings*, 2021 COA 112, ¶ 21. A trial before a biased judge is structural error, requiring reversal regardless of preservation. *Neder v. United States*, 527 U.S. 1, 8 (1999).

## C. Applicable Law

¶ 25    One guarantee of due process is a fair trial before a fair tribunal. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876, (2009). Colorado's due process clause, Colo. Const. art. II, § 25, similarly guarantees "the right to a trial before an impartial judge." *People v. Hall*, 2021 CO 71M, ¶ 20.

¶ 26    A judge must recuse "when, *objectively* speaking, 'the *probability* of actual bias on the part of the judge or decisionmaker

12

is too high to be constitutionally tolerable.'" *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (per curiam) (emphases added) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, (1975)); *Sanders v. People*, 2024 CO 33, ¶ 29. Actual bias is bias that in all probability will prevent a judge from dealing fairly with a party. *Jennings*, ¶ 28. A defendant asserting bias on the part of a trial judge must establish that the judge had a "substantial bent of mind against him or her." *People v. Drake*, 748 P.2d 1237, 1249 (Colo. 1988). The record must establish such bias clearly; mere speculative statements and conclusions are not enough. *Id.* Only when the judge was actually biased will we question the *result* of a proceeding. *Sanders*, ¶ 50.

## D. Analysis

¶ 27 There can be no doubt that the trial judge's comments should have alerted Harris and his attorneys to the issue that he raises on appeal. But to the extent that Harris contends that those comments were grounds for statutory disqualification, he never moved for disqualification of the judge under section 16-6-201(3), C.R.S. 2024, or for the substitution of the judge under Crim. P. 21(b)(1). "[I]n the context of judicial disqualification specifically, [the Colorado Supreme Court] ha[s] explained that 'when a party

13

knows of grounds for disqualification but waits to file a motion until after an adverse judgment has been issued, the motion is barred by waiver.'" *Garcia*, 2024 CO 41M, ¶ 46 (quoting *People in Interest of A.G.*, 262 P.3d 646, 652 (Colo. 2011)). Accordingly, Harris waived any claim that the judge was statutorily disqualified, and we decline to review his argument to the contrary on the merits.

¶ 28 To the extent Harris asserts that the trial judge harbored "actual bias" against him, that issue cannot be waived. *See Jennings*, ¶ 21. However, Harris's actual bias argument was not well developed in the opening brief; indeed, in his reply brief he concedes that "the thrust of the argument in the Opening Brief was that recusal was statutorily mandated." That largely precludes our review of Harris's actual bias claim because we do not consider arguments raised for the first time in a reply brief. *People v. Grant*, 174 P.3d 798, 803 (Colo. App. 2007).

¶ 29 The only actual bias argument that we can discern from the opening brief is that the trial judge's comments quoted above show that he had prejudged Harris's guilt on the question of his prior DUI convictions. Our examination of the record leads us to the opposite conclusion. What the judge learned while presiding over

proceedings connected to Harris's 2017 DUI conviction does not establish actual bias. *See People v. Roehrs*, 2019 COA 31, ¶ 21. Indeed, "[t]he extrajudicial source doctrine even counsels against disqualification where a judge has formed an opinion regarding the guilt or innocence of a defendant unless the opinion is so pronounced that it is likely to affect the judge's ability to be impartial at trial." *Id.* at ¶ 22.

¶ 30    In any event, nothing in the record suggests that the trial judge relied on his knowledge of Harris's previous conviction to admit any contested evidence in this case; to the contrary, he ruled *against* the prosecution on certain issues related to the 2017 conviction. On these facts, we cannot conclude that the trial judge had the "substantial bent of mind" necessary for actual bias. *Drake*, 748 P.2d at 1249; *People In Interest of A.P.*, 2022 CO 24, ¶ 30; *see also City of Manassa v. Ruff*, 235 P.3d 1051, 1058 (Colo. 2010) ("[I]n the absence of evidence . . . , the mere possibility" of prejudice "simply poses too remote and insubstantial a risk of actual bias" to implicate the guarantee of due process.).

## V.    Disposition

¶ 31    The judgment is affirmed.

JUDGE HARRIS and JUDGE PAWAR concur.