The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY

August 23, 2018

## 2018COA121

**No. 16CA0039, People v. Jamison — Crimes — Introducing Contraband in the First Degree — Possession of Contraband in the First Degree; Criminal Law — Prosecution of Multiple Counts for Same Act — Lesser Included Offenses**

A division of the court of appeals considers whether the defendant's convictions for introducing contraband in the first degree and possessing contraband in the first degree merge. The division concludes that the convictions should have merged at sentencing because possessing contraband in the first degree under section 18-8-204.1(1), C.R.S. 2017, is a lesser included offense of introducing contraband by making while confined under section 18-8-203(1)(b), C.R.S. 2017. Further, the division determines that the error here was plain because supreme court authority dictates that convictions for possession offenses must merge into convictions for offenses such as distribution and manufacturing. Thus, to the

extent the People rely on *People v. Etchells*, 646 P.2d 950 (Colo.

App. 1982), the division concludes that it is not directly on point

and that more recent supreme court decisions govern the issue of

merger here.  The division therefore vacates the defendant's

conviction for possessing contraband in the first degree.

The division also considers and rejects the defendant's

contentions that the trial court erred in rejecting defense-tendered

jury instructions on lesser nonincluded offenses and that

prosecutorial misconduct requires reversal.

Accordingly, the division affirms in part, vacates in part, and

remands the case with directions.

COLORADO COURT OF APPEALS                    **2018COA121**

Court of Appeals No. 16CA0039
Lincoln County District Court No. 15CR13
Honorable Jeffrey K. Holmes, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kyle Lee Jamison,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Welling and Martinez*, JJ., concur

Announced August 23, 2018

Cynthia H. Coffman, Attorney General, Brittany L. Limes, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Meredith K. Rose, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     Defendant, Kyle Lee Jamison, appeals his judgment of conviction entered on a jury verdict finding him guilty of one count of introducing contraband in the first degree and one count of possessing contraband in the first degree. We affirm in part, vacate in part, and remand with directions.

## I.  Background

¶ 2     Jamison was an inmate at a Department of Corrections (DOC) detention facility. During a random search of his cell, a corrections officer found an altered toothbrush behind Jamison's mattress. The toothbrush had been sharpened at one end and a razor blade had been affixed to the other end. In an interview with a DOC investigator, Jamison said that he used the device to cut fabric when making clothing.

¶ 3     He was charged with introducing contraband and possessing contraband, both in the first degree. At trial, the People called the corrections officer who had found the toothbrush and the investigator who had interviewed Jamison. Both testified that the toothbrush could be used as a weapon. The defense called Jamison's cellmate, who testified that he believed Jamison had used the toothbrush to score, fold, and cut paper and cardstock.

The jury found Jamison guilty of both charges. He was sentenced to five years on each count, with the sentences to run concurrently.

¶ 4    On appeal, Jamison contends that the trial court committed reversible error in (1) rejecting defense-tendered jury instructions on lesser nonincluded offenses; (2) permitting the prosecutor to refer to the toothbrush as a "dangerous instrument" and to elicit testimony to the same effect; and (3) entering convictions for both a greater offense, introducing contraband by making while confined, and a lesser included offense, possession of contraband. We disagree with his first two contentions but agree with his final contention. Thus, we affirm the introducing contraband conviction, vacate the possession of contraband conviction, and remand for the trial court to amend the mittimus accordingly.

## II.  Jury Instructions on Lesser Nonincluded Offenses

¶ 5    Jamison contends that the trial court erred in refusing to instruct the jury on lesser nonincluded offenses. We disagree.

### A.  Additional Facts

¶ 6    The defense tendered two jury instructions, one on introducing contraband in the second degree, § 18-8-204(1)(b), C.R.S. 2017, and one on possessing contraband in the second

degree, § 18-8-204.2(1), C.R.S. 2017.  In the trial court, Jamison

initially argued that the second degree offenses were lesser included

offenses of the charged crimes.  In response, the prosecutor argued

that the second degree offenses were not lesser included offenses

because the second degree offenses required proof of an element the

first degree offenses did not — namely, as relevant here, introducing

or possessing "contraband" as defined in section 18-8-204(2).

¶ 7     The defense later requested that, in the alternative, the

instructions be submitted as lesser nonincluded offenses.  The

defense argued that the evidence provided the jury with a rational

basis to find that the toothbrush fell within the definition of

contraband in section 18-8-204(2)(b) — "Any tool or instrument

that could be used to cut fence or wire, dig, pry, or file."  In

response, the prosecutor argued that there had been "no evidence

adduced" to support the defense's contention that the toothbrush

could be used for the purposes set out in section 18-8-204(2)(b).

¶ 8     In a bench ruling, the trial court held as follows:

> The Court does not find there has been any
> evidence that this particular item can be used
> to cut fence or wire, dig, pry, or file.  The
> evidence instead has been presented by the
> People that this is an item that falls within the

purview of being a dangerous instrument[,] and there has been a d[ea]rth of other evidence either from the People or from the defense that it would be something to be used for the purposes of [section 18-8-204(2)(b)].

The only other suggestions was this was an item used for a craft tool to cut paper or to hold down paper or cardboard. . . . The Court is going to find that there is not a rational basis for the jury to acquit the defendant of the offenses that are charged and simultaneously find him guilty of the lesser offenses whether treated as lesser nonincluded offenses or as lesser included offenses.

Thus, the trial court rejected the defense-tendered instructions.

## B. Standard of Review

¶ 9 "Colorado cases have not conclusively established the standard of appellate review applicable to denials of lesser nonincluded offense instructions." *People v. Wartena*, 2012 COA 12, ¶ 29, 296 P.3d 136, 141; *see also People v. Rubio*, 222 P.3d 355, 360 (Colo. App. 2009) (noting unresolved standard, but reversing under even abuse of discretion review).

¶ 10 Nevertheless, in *Wartena*, the division concluded that "[w]hether the record contains sufficient evidence to support instruction on a lesser offense is a factual inquiry reviewed for an abuse of discretion." ¶ 30, 296 P.3d at 141. We will follow the

4

*Wartena* division and apply that standard of review here. *See*

*People v. Nozolino*, 2014 COA 95, ¶ 43, 350 P.3d 940, 948

(reviewing trial court's denial of lesser nonincluded offense

instruction for abuse of discretion when the denial was made "on a

factual basis").

## C. Applicable Law

### 1. First Degree Introducing and Possessing Contraband

¶ 11    As relevant here, "[a] person commits introducing contraband

in the first degree if he or she knowingly and unlawfully . . . [b]eing

a person confined in a detention facility, makes any dangerous

instrument." § 18-8-203(1)(b), C.R.S. 2017; *see also* § 18-8-

203(1)(a) (defining alternative way of committing offense of

introducing contraband in the first degree). Section 18-8-203(1)(a)

lists various items that are contraband for the purposes of first

degree introducing contraband, including a dangerous instrument.

¶ 12    As for possession of contraband in the first degree, "[a] person

being confined in a detention facility" commits that offense "if he

knowingly obtains or has in his possession contraband as listed in

section 18-8-203(1)(a)." § 18-8-204.1(1), C.R.S. 2017; *see also*

§ 18-8-204.1(3) ("Possession of contraband in the first degree involving a dangerous instrument is a class 4 felony.").

¶ 13    A dangerous instrument includes, as relevant here, an unauthorized "knife or sharpened instrument . . . or any other device, instrument, material, or substance which is readily capable of causing or inducing fear of death or bodily injury." § 18-8-203(4).

2. Second Degree Introducing and Possessing Contraband

¶ 14    "A person commits introducing contraband in the second degree if he or she knowingly and unlawfully . . . [b]eing a person confined in a detention facility, makes any contraband." § 18-8-204(1)(b).  Under the statute defining introducing contraband in the second degree, contraband "does not include any article or thing referred to in section 18-8-203," the first degree offense.  § 18-8-204(2).  Instead, contraband as defined in section 18-8-204(1)(b) includes, among other items, "[a]ny tool or instrument that could be used to cut fence or wire, dig, pry, or file." § 18-8-204(2)(b).

¶ 15    As relevant here, "[a] person being confined in a detention facility commits the crime of possession of contraband in the

6

second degree if he knowingly obtains or has in his possession contraband as defined in section 18-8-204(2)." § 18-8-204.2(1).

¶ 16 Thus, for purposes of both introducing and possessing contraband in the second degree, a dangerous instrument as defined in section 18-8-203(4) does not fall within the definition of contraband. *See generally* § 18-8-204(2).

### 3. Lesser Nonincluded Offense Instructions

¶ 17 "[A] criminal defendant is entitled to have the jury presented with the option to convict him of a lesser non-included offense, so long as a rational evidentiary basis exists to simultaneously acquit him of the charged offense and convict him of the lesser offense." *People v. Naranjo*, 2017 CO 87, ¶ 15, 401 P.3d 534, 537. A lesser nonincluded offense is "a lesser offense that requires proof of at least one element not contained in the charged offense." *Id.* at ¶ 17, 401 P.3d at 538.

### D. Analysis

¶ 18 Jamison contends that the trial court abused its discretion in refusing to instruct the jury on the two lesser nonincluded offenses,

second degree introducing contraband and second degree possession of contraband.[1]  We disagree.

¶ 19    As noted, to convict Jamison of either second degree offense, the jury would have needed to find beyond a reasonable doubt that the toothbrush "could be used to cut fence or wire, dig, pry, or file." § 18-8-204(2)(b); *see also* § 18-8-204(1)(b); § 18-8-204.2(1).

¶ 20    Jamison argues, as he did in the trial court, that there was a rational basis for the jury to acquit him of the first degree offenses and instead convict him of the second degree offenses.  He bases this contention on two pieces of evidence — first, the cellmate's testimony that Jamison used the toothbrush to cut paper or cardstock; and, second, his own statement during the interview with the DOC investigator (an audio recording of which was played for the jury) that he used the toothbrush for cutting cloth while making clothing.

---

[1] Jamison has expressly abandoned his argument that second degree introducing and possessing contraband are lesser included offenses of their first degree counterparts.  *See People v. Borrego*, 538 P.2d 1339, 1342 (Colo. App. 1975) (not published pursuant to C.A.R. 35(f)) ("[T]he offense of introducing contraband in the second degree is not a lesser included offense of introducing contraband in the first degree.").

¶ 21    We disagree with Jamison's contention that this evidence "amply showed that the altered toothbrush could be used to cut fence or wire."  The evidentiary basis Jamison relies on simply does not square with the statutory language in section 18-8-204(2)(b) because while the evidence tended to show that the toothbrush could cut fabric or paper, there was no evidence that it could cut fence or wire.

¶ 22    Finally, we do not find persuasive Jamison's argument that section 18-8-204(2)(b) does "not demand evidence that the instrument *was* used to cut fence or wire . . ., only that it was capable of doing so."  In this case, that is a distinction without a difference.  Just as neither party introduced evidence that the toothbrush had been used to cut materials like wire or fence, they did not provide evidence that the toothbrush was capable of cutting those materials.

¶ 23    Thus, we conclude that the trial court did not abuse its discretion in rejecting the defense-tendered instructions on the lesser nonincluded offenses.

### III. Prosecutor's Use of the Term "Dangerous Instrument"

¶ 24    Jamison contends that the trial court erred in permitting the prosecutor to refer to the toothbrush as a dangerous instrument and to elicit testimony to the same effect.  We note that Jamison raises this claim as an evidentiary issue, arguing that the trial court abused its discretion in permitting the prosecutor to offer his opinion.  However, we view this as a claim of prosecutorial misconduct and address it as such.  *See generally People v. Fortson,* 2018 COA 46M, ¶ 14, ___ P.3d ___, ___ (reviewing prosecutor's challenged statements about inadmissible evidence during opening statement, closing argument, and examination of witnesses as prosecutorial misconduct claim).  Though we agree that some of the prosecutor's statements were improper, we perceive no basis for reversal.

### A.  Additional Facts

¶ 25    On numerous occasions, the prosecutor referred to the toothbrush as a "dangerous instrument."  The defense did not object to the following such references:

- During the People's opening statement, the prosecutor said that the corrections officer "found an object that he recognized as a dangerous instrument" in Jamison's cell.

- During direct examination, the prosecutor asked what the corrections officer did "[f]ollowing the discovery of the dangerous instrument."

- During direct examination, the prosecutor asked the DOC investigator whether he had received information regarding "finding a dangerous instrument" in the facility; whether Jamison admitted during the interview that he had "made that dangerous instrument"; and whether the investigator was familiar with the definition of "dangerous instrument" under Colorado law.

- During closing argument, the prosecutor stated that the corrections officer had "seized [the toothbrush] because it was a dangerous instrument" and argued that the DOC investigator had said, "Yeah, that's a dangerous instrument. That's a weapon."

¶ 26    In contrast, during the People's direct examination of the DOC investigator, the defense objected multiple times to the prosecutor's

11

reference to the toothbrush as a "dangerous instrument." First, the defense objected under CRE 403 when the prosecutor asked the investigator, "based on [his] education, training, [and] experience as a law enforcement officer, what would [he] consider the instrument that was found." The trial court sustained the objection "as to [the] form of the question." The following exchange then took place:

> [The People]: Okay. Investigator, based on your education, training, and experience, is this instrument a weapon?
>
> A: Yes, sir, it is.
>
> Q: Is it capable of causing bodily injury or death?
>
> A: Yes, sir, it can.
>
> Q: Does it also constitute a dangerous instrument within the meaning of Colorado law?
>
> [The Defense]: Judge, I'm going to renew the 403 objection.
>
> THE COURT: Sustained.

¶ 27    During redirect examination, the prosecutor again asked similar questions:

> [The People]: And I think you clarified that an inmate while they can have a toothbrush are they allowed to alter that in any way that would make that a dangerous instrument?

12

A: No.

Q: And would putting a point on the end of that toothbrush turn that into a dangerous instrument?

A: Yes, it would.

Q: So with [the toothbrush] since it has a sharpened end, does that constitute a dangerous instrument under --

A: Yes.

[The Defense]: We object, 403. The district attorney has been trying to get into this. This is 403. The Court already sustained this objection earlier.

THE COURT: I will let you finish your question. Answer, please.

[The People]: So in this case is this an alter[]ation that is disallowed by both Colorado Department of Corrections and Colorado law?

A: Yes, sir.

[The Defense]: Renewing my objection, 403.

THE COURT: Okay. I will sustain the objection. The jury is to disregard the responses to that question as well as I think there w[ere] responses given to questions previously, that's disregarding [sic] too.

The prosecutor then asked the investigator whether the razor blade was "attached to a dangerous instrument toothbrush," to which the

defense renewed its CRE 403 objection. The trial court sustained the objection "[a]s to characterization."

### B. Standard of Review

¶ 28 We engage in a two-step analysis in reviewing claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances. *Id.* Second, we decide whether, under the proper standard of review, any misconduct warrants reversal. *Id.*

¶ 29 We review conduct to which a defendant did not object for plain error. *Id.* at 1097. Under this standard, reversal is warranted only when prosecutorial misconduct is "flagrantly, glaringly, or tremendously improper," *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005) (quoting *People v. Avila*, 944 P.2d 673, 676 (Colo. App. 1997)), and "so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the jury's verdict," *id.*

¶ 30 We review conduct to which a defendant raised a contemporaneous objection at trial for harmless error. *Wend*, 235 P.3d at 1097. Prosecutorial misconduct is harmless if it did not

14

"substantially influence the verdict or adversely affect the fairness of the proceedings." *People v. Whitman*, 205 P.3d 371, 384-85 (Colo. App. 2007).

## C. Applicable Law

¶ 31 "[P]rosecutorial remarks that evidence personal opinion, personal knowledge, or inflame the passions of the jury are improper." *Domingo-Gomez*, 125 P.3d at 1050. Additionally, it is improper for a prosecutor to purposefully ask a question which he or she knows will elicit an inadmissible answer. *Fortson*, ¶ 14, ___ P.3d at ___. However, a prosecutor "can properly comment on reasonable inferences stemming directly from the facts in evidence during closing argument." *Domingo-Gomez*, 125 P.3d at 1051.

¶ 32 Appellate courts consider several factors in determining whether prosecutorial misconduct was prejudicial, including the nature of the error, the pervasiveness of the misconduct, the context, and the overall strength of the evidence supporting the convictions. *People v. McBride*, 228 P.3d 216, 225 (Colo. App. 2009).

## D. Analysis

¶ 33     Jamison contends that the prosecutor's pervasive references to the toothbrush as a dangerous instrument were in error and require reversal. While we agree that the prosecutor's statements were largely improper, we perceive no basis for reversal.

¶ 34     At the outset, we disagree with Jamison's contention that the prosecutor erred by referring to the toothbrush as a dangerous instrument during closing argument. A prosecutor may root closing argument in the facts adduced at trial, and we consider the prosecutor's closing argument here a proper comment on the evidence — namely, the testimony of the corrections officer and the DOC investigator that the toothbrush could be used as a weapon to cause potentially serious injuries. *See Domingo-Gomez,* 125 P.3d at 1051.

¶ 35     Aside from that minor exception, we agree with Jamison that the prosecutor erred in referring to the toothbrush as a dangerous instrument and in attempting to elicit testimony to that effect. Whether the toothbrush constituted a dangerous instrument as defined in section 18-4-203(4) was, in the prosecutor's own words, the "crux" of the case. His repeated reference to the toothbrush as

a dangerous instrument, and his questions on the topic using that phrase, were improper. *See Fortson*, ¶ 14, ___ P.3d at ___; *see also People v. Acosta*, 2014 COA 82, ¶ 32, 338 P.3d 472, 479 ("[A] lay witness may not testify regarding whether a particular legal standard has or has not been met, and '[t]he question that elicits the opinion testimony must be phrased to ask for a factual, rather than a legal opinion.'" (quoting *People v. Beilke*, 232 P.3d 146, 152 (Colo. App. 2009))).

¶ 36     However, we do not consider the misconduct so glaringly improper as to warrant reversal under a plain error standard. Here, the evidence against Jamison was overwhelming. During the interview with the DOC investigator, Jamison himself acknowledged that the toothbrush was his and, though he maintained he used it solely as a crafting tool, he admitted that the toothbrush could be used to injure someone. In light of that evidence, we conclude the prosecutor's statement and questions do not mandate reversal under the plain error standard.

¶ 37     As to the occasions on which the defense objected to the prosecutor's use of the term "dangerous instrument" — all of which occurred during the examination of the DOC investigator — the

People urge us not to consider Jamison's contentions of error on this point because the trial court sustained the objections. The People assert that Jamison's "contemporaneous objection to the comment[s] w[ere] sustained, and he requested no further relief." *People v. Douglas*, 2012 COA 57, ¶ 65, 296 P.3d 234, 249. We agree. Additionally, on one occasion during redirect examination, the trial court instructed the jury to disregard the investigator's responses to the series of improper questions. "Accordingly, we need not consider th[ese] alleged error[s]." *Id.*

¶ 38    In sum, we conclude that the prosecutor's references to the toothbrush as a dangerous instrument do not warrant reversal.

## IV.  Merger

¶ 39    Jamison contends that the trial court plainly erred in entering both the introducing contraband by making conviction and the possession of contraband conviction because the latter is a lesser included offense of the former. We agree and therefore vacate the conviction for first degree possession of contraband.

## A. Standard of Review

¶ 40     We review de novo whether merger applies to specific criminal offenses. *People v. Zweygardt*, 2012 COA 119, ¶ 40, 298 P.3d 1018, 1026.

¶ 41     The parties agree that Jamison did not preserve this claim. However, as the supreme court recently clarified, an unpreserved double jeopardy claim is reviewable for plain error. *Reyna-Abarca v. People*, 2017 CO 15, ¶ 47, 390 P.3d 816, 823.

¶ 42     Under plain error review, we reverse only if the error is "obvious and substantial," *Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116, 120, and "so undermined the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment of conviction," *id.* (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).

## B. Applicable Law

### 1. Double Jeopardy Principles

¶ 43     Unless a statute expressly authorizes multiple punishments for the same criminal offense, the Double Jeopardy Clauses of the United States and Colorado Constitutions prohibit "the imposition of multiple punishments for the same criminal conduct." *Woellhaf*

*v. People*, 105 P.3d 209, 214 (Colo. 2005); *see* U.S. Const. amends. V, XIV; Colo. Const. art. II, § 18. In Colorado, the General Assembly has determined that a defendant may not be convicted of two offenses for the same conduct if "[o]ne offense is included in the other." § 18-1-408(1)(a), C.R.S. 2017. A lesser offense is "included" in a greater offense when it "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." § 18-1-408(5)(a).

¶ 44    In *Reyna-Abarca*, the supreme court addressed "how courts should evaluate whether one offense is a lesser included offense of another within the meaning of section 18-1-408(5)(a)." ¶ 52, 390 P.3d at 824. The court clarified that "an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." *Id.* at ¶ 64, 390 P.3d at 826.

¶ 45    A few months after deciding *Reyna-Abarca*, the supreme court again addressed the test for determining whether one offense is a lesser included of another. The court clarified that, "[t]o the extent that a lesser offense is statutorily defined in disjunctive terms,

effectively providing alternative ways of being committed, any set of elements sufficient for commission of that lesser offense that is necessarily established by establishing the statutory elements of a greater offense constitutes an included offense." *People v. Rock* 2017 CO 84, ¶ 16, 402 P.3d 472, 478; *see also Page v. People*, 2017 CO 88, ¶ 11, 402 P.3d 468, 470.

## 2. Possession as a Lesser Included Offense

¶ 46    Colorado courts have held in contexts similar to those presented here that convictions for possession offenses must merge into convictions for offenses such as distribution and manufacturing. In *Patton v. People*, for example, the supreme court concluded that the defendant's conviction for possession of a controlled substance merged with his conviction for manufacture of the same substance because the former was a lesser included offense of the latter. 35 P.3d 124, 133 (Colo. 2001). As the *Patton* court noted, it could "envision no scenario in which an individual can manufacture [a controlled substance] without also possessing it." *Id.* at 131.

¶ 47    The supreme court reached a similar conclusion in *People v. Abiodun*, concluding that convictions for possession of a controlled

21

substance merged into convictions for distribution of that substance. 111 P.3d 462, 471 (Colo. 2005). Divisions of this court have held likewise. *See, e.g.*, *People v. Gilmore*, 97 P.3d 123, 133 (Colo. App. 2003) ("We conclude that the crime of simple possession is a lesser included offense of the crime of possession with the intent to distribute, when, as here, both charges are premised on possession of the same contraband.").

## D. Analysis

¶ 48    We begin by identifying the elements of the offenses. Under section 18-8-203(1)(b), a conviction for first degree introducing contraband by making requires proof that (1) a person; (2) confined in a detention facility; (3) in the State of Colorado, at or about the date and place charged; (4) knowingly and unlawfully; (5) made any dangerous instrument, controlled substance, marijuana or marijuana concentrate, or alcohol. *See* COLJI-Crim. 8-2:05 (2017). Under section 18-8-204.1(1), a conviction for possession of contraband in the first degree requires proof that (1) a person; (2) confined in a detention facility; (3) in the State of Colorado, at or about the date and place charged; (4) knowingly; (5) obtained or had in his possession contraband as listed in section 18-8-203(1)(a),

22

which includes a dangerous instrument.  *See* COLJI-Crim. 8-2:09 (2017).

¶ 49    Comparing these elements, we conclude that first degree possession of contraband is a lesser included offense of first degree introducing contraband by making.  As Jamison asserts, "[t]he elements of these two offenses are identical except that introducing contraband requires making a dangerous instrument while possession requires only possessing or obtaining it."  The statute does not defined "possess" or "obtain," but we follow the supreme court's logic in *Patton* and conclude that making necessarily establishes possession: "[I]t is evident that one who manufactures [contraband] also possesses the [contraband] in the course of manufacturing it.  'Possession' requires immediate and knowing control over the [contraband].  Logic dictates that such control is required in the production of the [contraband]."  *Patton,* 35 P.3d at 131.

¶ 50    Thus, first degree possession of contraband "contains only elements that are also included in the elements" of first degree introducing contraband by making.  *See Reyna-Abarca,* ¶ 64, 390 P.3d at 826.  Because possession of contraband is a lesser included

23

offense of introduction of contraband by making, the trial court erred in entering convictions for both offenses.

## E. Plain Error

¶ 51    We now turn to whether the trial court's error was plain. We conclude that it was.

¶ 52    Recently, the supreme court has used two approaches to the plain error standard as applied to double jeopardy claims. *See generally People v. Wambolt*, 2018 COA 88, ¶¶ 68-70, ___ P.3d ___, ___ (contrasting the two approaches). In *Reyna-Abarca*, the court held that an unpreserved double jeopardy claim is subject to plain error review, but, in applying that standard, stated that "courts have invariably concluded that when a defendant's double jeopardy rights are violated for failure to merge a lesser included offense into a greater offense, such a violation requires a remedy." ¶ 81, 390 P.3d at 828; *see also id.* at ¶ 82, 390 P.3d at 828 (noting that the People there "presented no compelling arguments as to why any double jeopardy errors . . . did not rise to the level of plain error"). In contrast, in *Scott v. People* — decided the same day as *Reyna-Abarca* — the supreme court assumed that the trial court had erred in entering convictions for both menacing and aggravated

robbery-menaced victim, but held that any error was not plain because it was not obvious. 2017 CO 16, ¶ 18, 390 P.3d 832, 835. The court in *Scott* concluded that the error was not obvious because a division of this court in *People v. Sisneros*, 44 Colo. App. 65, 606 P.2d 1317 (1980), "had rejected the precise argument Scott ma[de]" and, as a result, it was not obvious error "for the trial court to have acted consistently with that case." *Scott*, ¶ 18, 390 P.3d at 835.

¶ 53    Jamison urges us to follow *Reyna-Abarca*, while the People contend that *Scott* controls. Because the People here — like they did in *Scott* — argue that the law, as it existed when Jamison was sentenced, rejected the precise argument he advances on appeal, our analysis more closely follows the analysis of *Scott*. Nonetheless, we conclude that the error here was plain.

¶ 54    As stated in *Scott*, a plain error is an error that is both obvious and substantial. ¶ 15, 390 P.3d at 836. "For an error to be . . . obvious, the action challenged on appeal ordinarily 'must contravene (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law.'" *Id.* at ¶ 16, 390 P.3d at 835 (quoting *People v. Pollard*, 2013 COA 31M, ¶ 40, 307 P.3d 1124, 1133).

¶ 55    We conclude that the error here was obvious because it ran afoul of Colorado case law. The People contend that the error could not have been obvious because "no Colorado case law has suggested that possession of contraband is a lesser included offense of introduction of contraband." We disagree. *Patton* and *Abiodun,* along with decisions from our court, have held that possession is a lesser included offense of manufacturing. *See, e.g., Abiodun,* 111 P.3d at 468 ("In *Patton* we considered it clear that manufacturing a controlled substance cannot be committed without also possessing it, however briefly."). Those cases were decided well before Jamison was sentenced in November 2015; though they dealt with different statutory provisions than the ones at issue here, in our view they provided clear authority to support merging the convictions.

¶ 56    Nevertheless, the People contend that *People v. Etchells*, 646 P.2d 950 (Colo. App. 1982), dictates that the error here was not obvious because it was "the sole case on point" and constituted contrary authority. The *Etchells* division considered whether possession of contraband — specifically, marijuana — is a lesser included offense of introducing contraband in the first degree. 646 P.2d at 951. The division concluded that "[b]ecause proof of

26

possession is not an essential element to the crime of introducing contraband, the crime of possession of cannabis cannot be a lesser included offense thereof. It is merely a separate and different crime." *Id.*

¶ 57 However, it is not clear that *Etchells* actually is on point because the division there did not specify whether the defendant had been charged with introducing contraband by making under section 18-8-203(1)(b), or introducing under section 18-8-203(1)(a). *See generally Etchells*, 646 P.2d 950. Because the defendant in *Etchells* was charged with introducing marijuana, in our view it is more likely that she was charged under subsection 203(1)(a) given the apparent difficulty of making (growing) marijuana while confined, as would be required for a charge under subsection 203(1)(b). Given that the decision does not specify under which provision the defendant was charged, the trial court here could not rely on it as directly on point authority.

¶ 58 If we assume the defendant in *Etchells* was charged under subsection 203(1)(a), the case is not on point. In contrast to introducing by making under subsection 203(1)(b), introducing or attempting to introduce contraband under subsection 203(1)(a)

27

could potentially be committed without a defendant possessing the contraband. By way of example, a person could commit introducing contraband under subsection 203(1)(a) without also committing possession of contraband by asking someone to mail contraband to a detention facility. *See, e.g.*, *People v. Maestas*, 199 P.3d 713, 715 (Colo. 2009) (noting that the defendant was charged under section 18-8-203(1)(a) when, "while [he] was in custody awaiting his trial . . ., his sister mailed him a package . . . containing illegal narcotics").

¶ 59 However, even if we assume *Etchells* is directly on point, in our view the more recent supreme court authority conflicting with that decision controls. The decisions in *Patton* and *Abiodun* made the trial court's error here plain.

¶ 60 The People further assert that the error here was not plain because the supreme court has refined the test for determining whether one offense is a lesser included of another since Jamison was sentenced. Although the supreme court had not decided the line of cases beginning with *Reyna-Abarca* when Jamison was sentenced, we do not consider those cases dispositive as to whether the error here was plain. The supreme court decided *Patton* and

28

*Abiodun* well before it clarified the test under section 18-1-408(5)(a) in *Reyna-Abarca.* Those earlier cases provide clear authority that a conviction for possession of contraband would merge into a conviction for manufacturing contraband, and the *Reyna-Abarca* line of cases does not undermine, much less mention, *Patton* or *Abiodun. See generally Reyna-Abarca,* ¶¶ 53-58, 390 P.3d at 824-26 (reviewing several prior decisions concerning statutory elements test, but not discussing *Patton* or *Abiodun*). Thus, under Colorado case law available to the trial court at the time of Jamison's sentencing, first degree possession of contraband was a lesser included offense of first degree introducing contraband by making.

¶ 61    We further conclude that the error here was substantial. "[T]he prohibition against double jeopardy is a substantial right guaranteed by the United States and Colorado Constitutions." *People v. Friend,* 2014 COA 123M, ¶ 75, ___ P.3d ___, ___ (*cert. granted in part* Feb. 8, 2016). The trial court's error offended that substantial right.

¶ 62    Thus, we vacate the conviction for possession of contraband in the first degree and remand to the trial court to correct the mittimus.

## V. Conclusion

¶ 63 Accordingly, we affirm the judgment of conviction for introducing contraband in the first degree, vacate the conviction for possession of contraband in the first degree, and remand for the trial court to correct the mittimus.

JUDGE WELLING and JUSTICE MARTINEZ concur.